Thank you, Your Honor. May it please the Court, Counsel, my name is David Jerome and I represent James Burns in this case. If I could, if I would like to reserve two minutes for rebuttal. The case has an initial issue. It's a question of law surrounding the compensability of repetitive motion foot injuries. For this initial question, we're going to ask that you use a de novo review. I'll also begin by stating, unlike the case before us, this one all of the doctors are uncontested and all say the same thing. They all say that James' foot problems were aggravated and made symptomatic by his work activities of repetitive walking, standing, bending, kneeling, stooping at Speedco. Oh, wait, wait, hang on a second. You're asking for de novo review? Yes, Your Honor. Okay. Who's Dr. Schmidt? Dr. Schmidt is Speedco's doctor. Okay, and he agrees that these were work-related? Yes. On cross-examination, he agreed that the work activities at Speedco would be enough to aggravate and make symptomatic the condition, leading to the need for medical care. He didn't testify that calcification indicated the claimant's problems were long-staying, that the claimant's tendonitis was not related to his increased workload at Speedco, and that the problems with the claimant's left foot did not result from the claimant's favoring his right foot. Kraus flatly opined that the claimant's employment at Speedco is not causally related to the tendonitis. Kraus didn't say that? Kraus said that on direct examination. On cross-examination, he agreed that the work activities at Speedco would be enough to aggravate the condition and make symptomatic the condition. No one is saying that the condition was caused by his activities at Speedco. What we are arguing is that the condition was made symptomatic, which led to the need for surgery. The condition is a preexisting condition. To that we have no doubt. Does Kraus state the simple fact that he developed symptoms while working does not indicate that his employment is causally related to his diagnosis? He does say that. You're going to say on cross, you challenged that? I challenged that. And it's up to the commission to decide which part of the testimony is credible, right? But in this instance, we would hope that this appellate court would look to the whole body of the cross-examination. That's manifest weight. That's not de novo. But if the question is, and I would agree, with regards to the opinions, it's manifest weight. But if the commission looked to one part of the deposition and said, well, he said it's not related, without taking into account the fact that the doctor would later say it aggravated. Well, that's not the de novo side. That's a manifest weight. You got up here and said this is de novo review. Period. Okay. There is a de novo that's the first issue. We have a second that's a manifest weight. What's the de novo issue? The de novo issue is the fact that the commission said when they reversed the arbitrator, they said the commission does not believe that the mere act of repetitive standing or repetitive walking constitutes an act under the work comp act. They did not use the neutral risk analysis. They concluded as a matter of law that it didn't matter how unique the walking was, how repetitive, how the quantity or quality of the walking was, they said we do not believe that walking and standing in and of itself is enough to be a workers' compensation case. And they're right. They're 100% right. If it is qualitatively or quantitatively greater than that to which the general public is exposed, although it's neutral risk, it becomes compensable. If it is not qualitatively or quantitatively greater than that to which the general public is exposed, it is not compensable. And I agree 100%. So what they said is standing alone, repetitive walking or repetitive standing is not a compensable risk. They're right. How is that wrong in and of itself? Because in and of itself what they're saying is we're not going to look at the unique nature. They didn't say that. They said standing alone. Is that what they said? What they said is the mere act of repetitive standing or repetitive or does not believe that the mere act of repetitive standing or repetitive walking constitutes an accident. And they're right. No, it can if it's greater. I don't think you get what transforms a neutral risk into a compensable risk. It has to be qualitatively or quantitatively greater than that to which the public is exposed. So standing alone, merely standing alone in a repetitive nature is not compensable until you establish that it occurred longer and more frequently than the general public would be exposed to. And in this case, Arbitrator Lee held that it did. Now the commission... That's fine. That's manifest weight. It's not de novo. But if the commission... Counsel, you are beating a dead horse. You are going to lose this. Okay. I guess I would end by saying, well, as we look at this and when I'm looking at the neutral activity associated with this, if the commission in my world, as I look at their opinion, never examined, never reviewed, if they had said, I look at this walking and it's not repetitive enough, now I would understand that it's not de novo review. Well, whose burden is it to delineate that? Again, you're hung up on this in and of itself. You keep ignoring that fact. They're not saying that repetitive walking under no circumstances could ever be. They're saying walking, standing, in and of itself isn't enough. Okay. Now in this case, what we're looking at then is if walking and standing in and of itself, if hitting the quantitative and qualitative analysis, now we go to the next step, which is, does the manifest weight of the evidence prove... Does the petitioner meet the burden of proving that? Now the commission concluded that James did not sustain his burden of proving his activities at work actually caused his condition of ill-being. Right. That was their conclusion. But in their conclusion, they don't explain how. They don't explain why. They don't say the petitioner was not credible. They don't say the doctors aren't credible. And in this situation, as I began... Yes, they did. The commission specifically found your expert, Mull's, opinion was suspect in that it was based in part on Clayman's estimate that he walked 10 miles per day at Speedco. They didn't say that? They said suspect, but they never said discounted. Now, how about if we go to Dr. Krause? They never discounted his opinion that it was aggravated or Dr. Schmidt that said the work activities at Speedco, it aggravated those activities. So if all three doctors are saying work activities at Speedco aggravated this underlying condition... Krause said that? Krause said that. He had nothing to do with it. It was not causally related. But on cross-examination, when I talked... Go back to that. Okay. All right. Go ahead. So the court has said that it's, quote, a coincidence of symptoms while working alone does not establish that the work activities legally caused the condition that elicited the symptoms. We're saying, as you look through the medical, no doctor is saying it's just a coincidence of symptoms. All the doctors used the word aggravated. I made sure on cross-examination that we were using the word aggravated. Dr. Krause specifically said ABC Auto didn't aggravate, but Speedco did. And so what we're looking at then is I've got Dr. Krause who said it, Dr. Schmidt who said it, and Dr. Malt who said it. All three doctors concluded legally that the work activities at Speedco served to aggravate and make symptoms... Based on your interpretation of your cross? Yes. I mean, I was there. Nobody else... Dr. Krause did not say flat out it was causally related. Counsel, he said the opposite on direct. On direct. Okay. Now you're saying you're... So you attempted to clarify. I did. You can't say the doctor was clear completely on direct and cross it was not related. But if the doctor says not related in the beginning and on cross-examination he concedes the small element, which is the work activities at Speedco could aggravate... Could, not did. Agreed. Could. But in this situation, if the commission is saying it's a coincidence of symptoms, but we have doctors that are saying could, doctors that did say Schmidt, Speedco's doctor, who clearly said it did aggravate. Speedco's own doctor said it did aggravate. So what I'm looking at is where's the commission coming up with it's only a coincidence of symptoms if doctors are saying it aggravated it doesn't mean it's symptomatic. So for those reasons we would ask that this matter be reversed. Thank you, counsel. And have you decided how you're going to split your time? Yes, I'm going to have 13 minutes and I don't think I'll need it now since... Okay. Well, it's not up to us anyway. The clerk will tell you when your time is up. Okay. You've informed the clerk. Yes, we did. May it please the court, my name is Jeremy Sachman and I represent the appellee in this case, the employer, Speedco. You have hit my first argument, which was his DeNovo argument, and this is not a DeNovo case. The commission went through the record. They spent 10 pages going through the facts. There's 54 paragraphs of facts that they reviewed here. They indicated, as your honor pointed out, that the mere act of standing and walking is not compensable in the state of Illinois. I think we can all agree on that. Thank you. So let me ask you this. He keeps representing that all of the doctors, all three doctors that testified were very clear that the claimant's condition was work-related. Now, I'm not reading Krauss' saying. How do you read these testimonies? First of all, Dr. Wall, who is his doctor, clearly indicated, and he said it, I'm not saying that the condition was caused by work. He said potentially there was an aggravation from work. My doctor, Dr. Schmidt, testified that, in his opinion, the man's condition had deteriorated so far. He had an underlying disease, Achilles tendinosis, and he said that disease had deteriorated so far that the simple act of getting up from a couch and walking to a bathroom might aggravate the condition. That's the aggravation he was talking about. What did Krauss say? Pardon? What did Krauss say? Krauss' testimony was exactly as you pointed out. He said he didn't believe that there was any relationship between the work activities and the underlying symptom or the underlying condition. So I think that... Well, what do you make if he's saying he destroyed him on cross-examination and you got him to agree with him? Well, you know what, that's a question for the commission to answer, whether they believe that there was such significant cross-examination that his initial opinion was destroyed. And the commission said they didn't believe that. So I think that that's exactly where we have a problem here. So the question here, to make the claim compensable, this is a manifest way to the evidence claim. And to overrule the commission's decision, which clearly was supported by the facts, you'd have to show that only a contrary opinion would be permissible under this state of facts. And the courts have said on numerous occasions that in medical issues and in factual issues, the commission's decision is given great deference and is not to be reversed unless it's contrary to the manifest way to the evidence. Now, the argument we heard here today is strictly, well, I don't agree with the commission. That's all he said. There are differing opinions from each of the doctors, and the commission chose a decision or an interpretation wherein they found that he did not present enough evidence to show that there was a compensable injury. Now, let's look at the analysis here. To be compensable in a neutral risk like this, the petitioner has the responsibility to show that there is, in fact, a qualitative increase in encountering that risk as a result of the employment. Do we even need to go there? Not really. Based on Krauss' testimony? If the commission believed Krauss that there is no causal relationship between the man's work and his condition and well-being, then why do we even need to go to the rest? Well, I think that we need to show that, in fact, there wasn't. First of all, the facts that were given to Schmidt, to Wahl, and to the initial doctor who saw him in the emergency room by the petitioner was that he walked 10 miles a day. And, in fact, that's not true. They based their opinions on that. And, as was pointed out, the opinions are subject to question because they were relying upon faulty facts. As it turned out, when the man testified, he testified that, well, he might have exaggerated a little bit. He didn't really know. We put in evidence of another worker, same job, who wore a pedometer. And, while wearing that pedometer, he walked one and a half to three miles a day. That's it. At the worst case scenario, that's less than a third of what these doctors were told when they were asked, could there have been an aggravation? So, the commission, and it pointed out in its decision, said, we clearly rebutted that testimony. And, because it was rebutted, and because that's what these doctors relied upon, their opinions on Krauss's connection are suspect at best. Now, the other thing that was testified to, the petitioner testified that his job required him to walk 20 times around these trucks that were pulled in. The trucks were 70 feet long, 10 feet wide. That's 160 feet that he would have to walk around 20 times a day. That's less than one mile. Less than one mile he walked per his testimony. Where's the increased risk with that? And, oh, by the way, how do we know what the general public walks on a general basis? There's nothing in there. There's a failure of proof. It was his obligation to put it in. He didn't put one iota of proof in regarding what the general public walks. So, given this information, there was more than enough factual information for the commission to find the way that they did. They found that he didn't sustain his burden of proof. They denied the claim based on failure to show accident. They denied it based on failure to show causal connection. We would ask that you affirm the commission's decision. Thank you. Thank you, counsel. Counsel, you may respond. Good afternoon. My name is Juan Arias, here representing ABC St. Louis Auto Auction. May it please the court, I will be very brief on this. But suffice it to say, we are asking that this court affirm the commission's decision and find that the commission did not err in finding that the claimant failed to sustain his burden of proof, that he sustained a compensable repetitive trauma injury under Illinois law, and further find that the commission's denial of these claims is supported by the manifest weight of the evidence. And I think I'll leave it at that. Thank you, counsel. Counsel, you may reply. Thank you. I'll be brief. I believe, as counsel has indicated, he agrees. Dr. Mahl did say that this condition was aggravated by his work activities. And even the commission, in their decision, says, the arbitrator was correct that Dr. Schmidt testified that the activities at work exacerbated his preexisting condition and Dr. Krause acknowledged that the activities likely increased his symptomology. So the problem I've got with this on a manifest weight is, if they're saying there's a doctor who says this is not related to his work activities, no one is identified in the commission's decision. All three doctors have said it either aggravated or increased the symptomology. That's not true. I'm reading from the commission's decision. In addition, Dr. Schmidt opined that any activity of everyday living would aggravate the petitioner's symptomatology. And Dr. Krause opined that the work activities did not change the natural progression of the petitioner's preexisting ongoing disease. Dr. Mahl admitted, et cetera, and so on. And then Dr. Mahl, they said, Dr. Mahl based his opinion on the history provided by the petitioner, that he walked 10,000 miles a day, a history which was successfully rebutted by the respondent's witness. And I agree with that statement. It did not change the pathology. What we're talking about is the symptomology, which is what Dr. Krause said, acknowledged that the activities increased his symptomology. That's what the medical treatment is intended to treat. You can't fix the underlying condition. The injections, the core of treatment was meant to treat the symptomology that was caused by him working 10 hours a day, walking on concrete, walking on metal steps, using these defective boots. The onset of symptomology was at work. No one's talking about onset of symptomology at home or anywhere else. And so that's where I believe that the manifest weight of this, as I'm reading these medical conclusions, the manifest weight is going the other way, that all the doctors are saying, at minimum, and I will agree to you it didn't change pathology, at minimum, the symptoms began at work. The work activities would be enough to make this symptomatic. So that's where I'm saying it needs to be reversed on a manifest weight. Thank you. Thank you, counsel. For your arguments in these matters, it will be taken under advisement, and written disposition shall issue. The court will stand in recess until 9 a.m. tomorrow morning.